UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH D. FLOOD,

        Plaintiff,                            Civil Action No. 2:10-cv-14819

        v.                                 District Judge Lawrence Z. Zatkoff
                                            Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11,12]

Plaintiff Keith D. Flood ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties filed summary judgment motions, (Dkts. 11, 12) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 3, 10).

**I. RECOMMENDATION**

For the reasons set forth below, this Court finds that the ALJ's Residual Functional Capacity ("RFC") assessment is supported by substantial evidence, and the ALJ adequately explained his credibility assessment. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff alleges that he became unable to work on August 2, 2005. (Tr. 112.) The Commissioner denied Plaintiff's disability application on April 13, 2006. (Tr. 38-42.) Plaintiff then filed a request for a hearing, and on August 28, 2008, he appeared with counsel before Administrative Law Judge ("ALJ") Lubomyr M. Jachnycky, who considered the case *de novo*. (Tr. 468.) In a November 25, 2008 decision, the ALJ found that Plaintiff was not disabled. (Tr. 26-37.)

Plaintiff requested review from the Appeals Council on January 2, 2009. (Tr. 67.) In an order dated April 10, 2009, the Appeals Council vacated the hearing decision and remanded the case to the ALJ to further evaluate the Plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-7p and, if warranted by the expanded record, obtain supplemental evidence from a vocation expert. (Tr. 77-78.) Accordingly, the ALJ held a second hearing on August 10, 2009. (Tr. 498.) In an October 5, 2009 decision, the ALJ again found Plaintiff not disabled. (Tr. 24.) The ALJ's decision became the final decision of the Commissioner on October 25, 2010, when the Appeals Council denied Plaintiff's (second) request for review. (Tr. 5.) Plaintiff filed this suit on February 8, 2011, alleging, *inter alia*, that the ALJ's decision on remand is still deficient under 20 C.F.R. § 404.1529 and SSR 96-7p.

### B. Background

Plaintiff was 43 years old at the time of the ALJ's second decision. (Tr. 112, 498.) He has a tenth-grade education. (Tr. 490.) Plaintiff was a factory worker who installed vehicle springs before his claimed disability. (Tr. 476.) While working, a large leaf spring, which Plaintiff estimated as weighing eighty or ninety pounds, fell on his feet. (Tr. 476.) Plaintiff finished his

2

workday and went home, but after continued pain, Plaintiff's wife took him to the hospital. (Tr. 477.) He returned to work the following week. (*Id.*)

### *1. Plaintiff's Testimony*

At the August 10, 2009, hearing before the ALJ, Plaintiff (again) testified regrading his right-foot pain. On a scale of one to ten, ten being pain requiring hospitalization, Plaintiff attested that he has approximately three "good days" per week when his pain is an eight. (Tr. 509.) On "bad days" Plaintiff said his pain is a ten, and he sits on the couch. (Tr. 509.) To help alleviate pain, Plaintiff elevates his foot during the day, through the use of a recliner, and when he sleeps at night, by using two pillows under his right leg. (Tr. 506, 512.) Plaintiff asserted that he needs to elevate his foot to about hip level: a level where his foot is perpendicular to his body. (Tr. 512.)

Plaintiff stated that he can stand comfortably for approximately fifteen or twenty minutes before he feels a tingling sensation in his foot and he needs to sit. (Tr. 513-14.) Plaintiff stated that he needs to sit for 30 or 45 minutes before he can stand again. (*See* Tr. 515-16; *see also* Tr. 479-80 (August 28, 2008 testimony).) Plaintiff uses a cane to help him stand. (Tr. 513.) Plaintiff testified that his foot pain worsens when he walks, but he is able to walk approximately half a block. (Tr. 514; *see also* Tr. 481-82 (August 28, 2008 testimony).)

As for activities of daily living, Plaintiff's wife completes typical household chores such as cooking, cleaning, and grocery shopping. (Tr. 504.) Plaintiff assists by putting groceries or other items away and removing food from the refrigerator. (Tr. 505.) Plaintiff stated he watches television for approximately six hours a day and with his leg elevated in a recliner. (Tr. 506.) On his "good days" he drives over to his sister's, who also has a chair for Plaintiff. (Tr. 506; *see also* Tr. 487.) Were it not for his injured leg, Plaintiff stated that he could complete more tasks. (*Id.*)

*2. Medical Evidence*

While working as a line leader for Detroit Chassis on August 2, 2005, an 80-90 pound spring fell on top of Plaintiff's feet. (Tr. 476.) He was assessed with a crush injury, an open wound, and cellulitis of the right foot. (Tr. 236.)

Internist Dr. Ellenburg restricted Plaintiff from work from September to October 2005. (Tr. 247.) In September 2005, Dr. Jeffery Carroll found Plaintiff's x-rays to be normal and recommended physical therapy, but did not restrict Plaintiff from work. (Tr. 190.) Plaintiff attended physical therapy from September to December 2005. (Tr. 248-260, 262-264.) Dr. Carroll restricted Plaintiff to "deskwork" in November and December 2005. (Tr. 188-189, 261).[1] A bone scan conducted on December 30, 2005, revealed mildly increased perfusion and increased osseous activity in the right foot, and indicated that a diagnosis of reflex sympathetic dystrophy ("RSD") could not be ruled out. (Tr. 191.) In January 2006, Dr. Carroll recommended a neurological evaluation for possible RSD, but also noted that Plaintiff no longer needed an assistive device to ambulate. (Tr. 188.)

In January 2006, Plaintiff also visited Dr. Gary Sarafa, his primary care physician, due to right foot pain. (Tr. 198.) Dr. Sarafa prescribed Gabapentin and advised Plaintiff to visit an orthopedist. (Tr. 199.)

In connection with his worker's compensation claim, Plaintiff visited orthopedic specialist Dr. David Prieskorn in late January 2006. (Tr. 214-217.) He noted Plaintiff's use of a cane, but found no signs of RSD. (Tr. 217.) Dr. Prieskorn also found "no objective findings to substantiate any of [Plaintiff's] subjective complaints" and saw "no reason why he can't return back to full work

---

[1] Plaintiff was restricted from prolonged walking/standing and stair climbing. (Tr. 261.)

without restrictions . . . ." (Tr. 217.)

In early February 2006, Plaintiff returned to Dr. Sarafa; his chief complaint was "[t]hey told me I could go back to work. I don't see how. My foot is still hurting and I'm still walking with my cane." (Tr. 195.) Dr. Sarafa restricted Plaintiff from work until April 1, 2006, but indicated that Plaintiff could perform a "seated job." (Tr. 195-96, 265.) In May 2006, Dr. Sarafa noted that Plaintiff did not follow-up as ordered and had yet to return to work despite the expiration of the temporary restriction. (Tr. 406.)

In June 2006, also in connection with his worker's compensation claim, Plaintiff visited Dr. Jack Belen, a specialist in physical medicine and rehabilitation. (Tr. 204-06.) His impression was that Plaintiff suffered from chronic right foot pain and RSD. (Tr. 206.) Dr. Belen stated that Plaintiff could not complete any job that required standing, walking, stair climbing, and could not use his right foot for any occupational purpose, such as operating a foot pedal. (*Id.*)

In November 2006, again for Plaintiff's then-pending worker's compensation claim, Dr. Stanley Sczecienski, a pain management and sport medicine specialist, examined Plaintiff. (Tr. 218-233.) His impression was that of subjective pain without objective evidence of deficit for his right foot, as well as no objective evidence to support a diagnosis of complex regional pain syndrome, type 1. (Tr. 229.) Dr. Sczecienski definitively noted that Plaintiff did not have RSD. (Tr. 230, 233.) He concluded that Plaintiff did not need further treatment and he should be able to return to work at full duty. (Tr. 231-32.)

Plaintiff returned to Dr. Sarafa in October 2007. (Tr. 408-409.) Dr. Sarafa found that Plaintiff was ambulating without difficulty and found no appreciable deformity with Plaintiff's right foot. (Tr. 409.)

In December 2007, by way of referral from Dr. Sarafa, Plaintiff sought treatment from Dr. Richard Needleman, an orthopedist. (Tr. 208.) X-rays showed degenerative joint disease in one foot, and Dr. Needleman suggested further investigation of Plaintiff's foot pain. (Tr. 208-210.) On January 8, 2008, Dr. Needleman performed a diagnostic lidocaine injection and his assessment was that Plaintiff had injured his superficial peroneal nerve. (Tr. 267.) He further noted that Plaintiff might benefit from surgery. (Tr. 267.) On June 9, 2008, Dr. Needleman performed surgery to decompress a nerve in Plaintiff's ankle, but Plaintiff reported no relief after the surgery. (Tr. 444, 449-50.)

On August 18, 2008, Dr. Sarafa limited Plaintiff to seated work with no prolonged standing, limited walking, and no climbing. (Tr. 396.) Dr. Sarafa's restriction expired in September 2008. (Tr. 396.) Similarly, also beginning on August 18, 2008, Dr. Needleman restricted Plaintiff to seated work that allowed him to elevate his foot, with no prolonged standing, limited walking, and no climbing. (Tr. 397.) Dr. Needleman's restrictions were only effective until November 2008, however. (*Id.*)

*3. Vocational Expert's Testimony*

Vocational Expert ("VE") Richard Szydlowski testified at the hearing on remand. (Tr. 522.) The ALJ asked the VE to assume a forty-three year old person with a tenth-grade education and past work experience equal to the Plaintiff's work experience. (Tr. 526.) Additionally, the assumed individual has a history of traumatic foot injury with residual pain, cellulitis, depression, and uses a cane to ambulate. (*Id.*) Furthermore, this person suffers adverse side effects from medications such that the person becomes drowsy or dizzy in the morning for a short time. (Tr. 527.) The person can lift or carry a maximum of ten pounds occasionally, sit for approximately six hours in

6

an eight-hour day, stand and walk for about two hours in an eight-hour day, but needs a sit/stand option after twenty minutes, and cannot kneel, crawl, or crouch. (*Id.*) Finally, the person needs to elevate his foot approximately one foot off the floor, and because of problems with pain, concentration, persistence, or pace, he is limited to jobs entailing simple, routine and unskilled work. (Tr. 528.)

According to the VE, a person with these limitations could not perform Plaintiff's previous work. (*Id.*) However, the VE stated that a person with the limitations could perform sedentary, unskilled work. (*Id.*) The VE estimated that there were 4,000 clerical handling jobs in southeastern Michigan that Plaintiff could perform as well as 2,000 inspector, checker, sorter, and assembler jobs and 4,000 security services jobs (including surveillance system monitors and security receptionists). (Tr. 528-29.)

The VE was then presented with a second hypothetical with the same limitations as the first except that the person now needed to elevate his foot to "the chair level he's on right now . . . that was mentioned prior to this proceeding." (*Id.*)[2] In response to this added restriction, the VE reduced the number of available clerical handling jobs to 2,000. (*Id.*) The VE also reduced the number of available assembler jobs to 1,000. (*Id.*) The number of available security service jobs would be reduced to 2,000 by the elimination of the security receptionist position. (Tr. 528-30.)

The ALJ then presented the VE with a third hypothetical. (Tr. 530.) This hypothetical incorporated all the restrictions in the first two hypotheticals, except that the assumed individual

---

[2]Earlier in the proceeding, Plaintiff stated that the level which he elevated his leg in the courtroom, which brought his leg perpendicular to his body, was the level that he needed to elevate his foot at home. (Tr. 521.) The VE and Plaintiff's attorney agreed to call this "chair" level in response to the chair that was located in the hearing room. (*Id.*)

only has about three "good days" per week, that is, where the person is fully functional. (*Id.*) With this increased restriction, the VE concluded that all competitive employment would be precluded. (*Id.*)

Finally, the ALJ presented the VE with a fourth hypothetical. (Tr. 531.) The ALJ asked the VE to assume everything in hypotheticals one and two, except that, in terms of pain, the person suffers from level ten-out-of-ten pain on a daily basis. (*Id.*) The ALJ described level ten pain as excruciating pain with the need to go to an emergency room and precluding an ability to concentrate. (*Id.*) According to the VE, a person suffering from such pain would not be able to perform any of the available jobs given in response to the previous hypotheticals. (*Id.*)

Upon examination by Plaintiff's attorney, the VE testified that all work would be precluded if a person needed to elevate his leg above the "chair" level previously discussed at the hearing. (Tr. 532.) Plaintiff's attorney then attempted to ask if elevating to hip level would preclude work, but the VE clarified that he considered hip level to be the same as chair level – approximately 36 inches in height. (*Id.*)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D. The Administrative Law Judge's Findings**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2005 — Plaintiff's alleged onset date. (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: history of traumatic foot injury with residual pain, cellutitis, and depression. (*Id*.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) In examining the four "B criteria"

associated with the Listings, *see* 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.04, the ALJ found that Plaintiff had (1) mild restrictions in activities of daily living, (2) mild difficulties in social functioning, (3) moderate difficulties in concentration, persistence, or pace, and (4) experienced no episodes of decompensation of extended duration. (Tr. 19.) In addition, the ALJ concluded that the evidence failed to establish the presence of the paragraph C criteria. (Tr. 19.) Between steps four and five, the ALJ determined that

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant can lift no more than 10 pounds on an occasional basis, sit for 6 hours in an 8-hour workday, stand/walk for 2 hours in an 8-hour workday, and requires a sit/stand option after 20 minutes. The claimant can bend and squat on an occasional basis and can perform work that does not require the ability to kneel, crawl, crouch, or climb steps. The claimant requires work that allows the ability to elevate his foot about 1 foot off the floor while sitting. The claimant can perform simple, routine, unskilled work.

(Tr. 20.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 22.) At step five, the ALJ relied on VE testimony in response to his hypotheticals, and found that work existed in significant numbers that Plaintiff could perform. (Tr. 23-24.) These occupations include clerical preparer (4,000 jobs), inspector/checker (6,000 jobs), assembler (2,000 jobs), and surveillance systems monitor (2,000 jobs). (Tr. 23.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal

quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without

interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

Plaintiff contends that the ALJ (1) created an inaccurate RFC and that the RFC assessment is not supported by substantial evidence, and (2) inaccurately assessed Plaintiff's credibility regarding his pain and accompanying symptoms. (Pl.'s Mot. Summ. J. at 9-13.)

*1. The ALJ's RFC Assessment is Supported by Substantial Evidence*

Plaintiff first asserts that the RFC determination, which limits him to standing/walking for twenty minutes at a time for a total of two hours per day, is inconsistent with Dr. Sarafa and Needleman's restrictions of "no prolonged standing" and "very limited walking." (Dkt. 7, Pl.'s Mot. Summ. J. at 9-10.) But neither Dr. Needleman nor Dr. Sarafa quantified these restrictions, and, thus, they are not necessarily incongruent with two total hours of walking and/or standing per day. More importantly, their restrictions were temporary. Dr. Needleman restricted Plaintiff from these activities for two months in 2008. (Tr. 397.) Dr. Sarafa restricted Plaintiff from these activities for a similar, if not shorter, time period. (Tr. 396.)

Further, despite the fact that the doctors' restrictions were only temporary, the ALJ did account for Plaintiff's claimed inability to stand for prolonged periods and walk significant distances. Plaintiff testified that he can stand for approximately twenty minutes at a time and walk approximately one half of a block. (Tr. 513-514.) Plaintiff also testified that he needs to sit for only 30 or 45 minutes before he can stand again. (*See* Tr. 515-16; *see also* Tr. 479-80 (August 28, 2008 testimony).) The ALJ accounted for these allegations by limiting Plaintiff to sedentary jobs with a sit/stand option after 20 minutes. (Tr. 527.) Plaintiff's standing and walking argument does not address the fact that Plaintiff had the option to sit after 20 minutes. (Pl.'s Mot. Summ. J. at 9-10.)

Additionally, Plaintiff claims that the ALJ's RFC limitation of a twelve-inch elevation is not supported by medical or lay evidence. (Pl.'s Mot. Summ. J. at 10.) But there is no objective medical evidence that suggests that Plaintiff needs to elevate his foot to a higher level. Upon review of the record, only Dr. Needleman provided an elevation restriction. (Tr. 397.) However, Dr. Needleman did not say to which height and, as discussed, his restriction was a temporary one. (*Id.*) Plaintiff fails to point to any other medical opinion suggesting that Plaintiff needed to elevate his foot at all, let alone more than twelve inches.

Moreover, any error in this regard is harmless. The ALJ could have accepted that Plaintiff needed to elevate his foot to "chair" level, 36 inches off the ground according to the VE, and nonetheless concluded that Plaintiff was not disabled. The VE testified that even if Plaintiff needed to elevate his foot to chair level, Plaintiff could perform 2,000 inspector/checker/sorter jobs, 2,000 clerical preparer jobs, 2,000 security monitor jobs, and 1,000 assembler jobs. (Tr. 528-529, 532.) Therefore, even if the ALJ's RFC limited Plaintiff to jobs that allowed for elevation at chair level, the ALJ's determination of not disabled would still be supported by substantial evidence. *See Dannenberg v. Comm'r of Soc. Sec.*, No. 1:09-CV-811, 2010 WL 5139852, at *4 (W.D. Mich. Aug. 10, 2010) ("No Principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989))).

Accordingly, the Court rejects Plaintiff's first claim of error regarding the inaccuracy of the ALJ's RFC assessment.

### *2. The ALJ Adequately Explained His Assessment of Plaintiff's Credibility*

It appears to this Court that Plaintiff's second point of error is a procedural one. Rather than

asserting that substantial evidence does not support the ALJ's credibility determination – a determination that this Court must accord great deference – Plaintiff argues that the ALJ "provided no analysis of [the 20 C.F.R. § 404.1529(c)] factors, articulating which he found most or least compelling, what evidence supported his findings in that regard, and how he resolved conflicts in the record. Instead, he simply included . . . conclusory language [regarding Plaintiff's credibility]. . . . SSR 96-7p requires a far more detailed . . . explanation for the ALJ's credibility determination[]." (Pl's Mot. Summ. J. at 12-13).

In assessing a Plaintiff's credibility, "[f]irst, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186 at *2. If the ALJ finds that such an impairment exists, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* And if the "individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* The regulations set forth a non-exhaustive list of considerations – in addition to the objective medical evidence, *see* 20 C.F.R. § 404.1529(c)(4) – that inform this credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment,

14

other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

While 20 C.F.R. § 404.1529 "contains no express articulation requirement," SSR 96-7p does. *See Cross*, 373 F. Supp. 2d at 732. That ruling provides, in pertinent part,

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p. This "strong statement from . . . [SSR 96-7p] constitutes a clear directive to pay as much attention to giving reasons for discounting claimant credibility as must be given to reasons for not fully accepting the opinions of treating sources." *Cross*, 373 F. Supp. 2d at 732.

However, even in view of SSR 96-7p's explanatory requirement, courts have found that an ALJ's narrative need not explicitly discuss each of the seven factors identified in 20 C.F.R. § 404.1529(c)(3); instead an ALJ "should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence." *Cross*, 373 F. Supp. 2d at 733 (citing *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wis. 2005)); *see also Bowman v. Chater*, 132 F.3d 32 (table), 1997 WL 764419, at *4 (6th Cir. 1997) ("While this court applied each of [the 1529(c)(3) factors in [*Felisky v. Bowen*, 35 F.3d 1027, 1039-1040 (6th Cir. 1994)] we did not mandate that the ALJ undergo such an extensive analysis in every decision. Rather, we held that where the medical record does not contain objective evidence to support pain allegations, such allegations may not be

dismissed without a review of non-medical factors."); *Rife v. Comm'r of Soc. Sec.*, No. 10-11175, 2011 WL 689655, at *2 (E.D. Mich. Feb. 16, 2011) ("[A]n ALJ's credibility determination need only be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'") (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 238 (6th Cir. 2007)).[3]

While not explicitly referenced by name or number in the ALJ's opinion, the narrative makes clear that the ALJ did consider the factors described in 20 C.F.R. § 404.1529(c). Regarding daily activities, the ALJ noted that Plaintiff does not complete housework and spends about six hours per day watching television. (Tr. 21.) Additionally, the ALJ noted that Plaintiff visits his sister on a good day and has visitors about twice per week. (*Id.*) Relating to the second factor, the ALJ noted that Plaintiff testified to having about three good days per week with pain at about an eight of out ten on a good day, and ten out of ten on a bad day. (Tr. 20-21.) As to the third factor, the ALJ noted that Plaintiff could stand for approximately 15-20 minutes before experiencing pain and could only walk for approximately one-half of a block. (Tr. 21.) Regarding the fourth factor, the ALJ noted that Plaintiff takes pain medication with some temporary side-effects of dizziness. (Tr. 20.) As to factor five, the ALJ noted that Plaintiff underwent a surgical procedure and physical therapy without great success. (Tr. 21.) Regarding the sixth factor, the ALJ stated that substantial weight was given

---

[3] The court in *Rife* went on to say "Plaintiff's argument is incorrect, as 20 C.F.R. § 404.1529*(b)* does not require the ALJ to discuss every factor in every decision." *Rife*, 2011 WL 689655, at *1 (emphasis added). It is apparent that the court intended to cite to subsection (c) (which is at issue here). Section 404.1529(c) sets forth the "other evidence" factors, and the court in *Rife* was in the midst of rejecting Plaintiff's argument that a § 404.1529 analysis requires the ALJ to address each of the § 404.1529 factors.

16

to Plaintiff's testimony of needing to elevate his foot to chair level in order to alleviate pain. (Tr. 22.)

Although the evidence the ALJ cited pertaining to these § 404.1529(c)(3) factors tends to favor crediting Plaintiff's testimony, the ALJ was also required to consider the objective medical evidence contrary to Plaintiff's testimony. In particular, § 404.1529 further provides that the Social Security Administration

> will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements *in relation to the objective medical evidence and other evidence*, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and *the extent to which there are any conflicts between your statements and the rest of the evidence*, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted *as consistent with the objective medical evidence and other evidence*.

20 C.F.R. § 404.1529(c)(4); *Osier v. Astrue*, No. 2:10-cv-00044, 2011 U.S. Dist. LEXIS 73858, at *58 (M.D. Tenn. July 8, 2011) ("An ALJ should not reject statements made by a claimant merely because they are not substantiated by the available evidence and instead must evaluate a claimant's statements in relation to the objective medical evidence and with attention given to any inconsistencies between the claimant's statements and other evidence." (citing § 404.1529(c)(4))).

In this regard, the ALJ's narrative states that he gave "substantial weight" to the medical opinions of Drs. Needleman and Sarafa, both of whom indicated that Plaintiff was able to return to work with sitting restrictions. (Tr. 22.) The ALJ also noted that Dr. Presiskorn found no evidence of atrophy, and "found that there were no objective findings to substantiate any of [Plaintiff's]

17

subjective complaints." (Tr. 21.) Furthermore, the ALJ noted that an independent medical evaluation performed by Dr. Sczecienski "showed that there was no objective medical evidence of deficits for the right foot to substantiate [Plaintiff's] subjective pain, or to substantiate a diagnosis of complex regional pain syndrome, type 1." (*Id.*) Indeed, upon review of the record, nearly all of the medical evidence suggests that Plaintiff was capable of performing at least a limited range of occupational tasks.

Plaintiff may be correct that the ALJ did not provide an exemplary credibility analysis, but, given the foregoing, the Court is able to discern that the ALJ weighed the evidence relevant to the § 404.1529(c)(3) factors against the objective medical evidence, *see* § 404.1529(c)(4), and in view of the objective medical evidence, discounted Plaintiff's allegations of disabling pain.

Plaintiff emphasizes that the Appeals Council remanded this case to the ALJ so that the ALJ could more throughly describe the basis for his credibility determination. (*See* Pl.'s Mot. Summ. J. at 12.) In this regard, the Court notes that much of the § 404.1529(c)(3) evidence – such as daily housework, Plaintiff's testimony of frequency and the level of his pain, and Plaintiff's experiences of dizziness as a side-effect of medication – was not included in the ALJ's first decision. The fact that this information was included in the second narrative supports this Court's conclusion that, on remand, the ALJ complied with 20 C.F.R § 404.1529 and SSR 96-7p.

In sum, based upon a review of the ALJ's narrative, this Court finds that the ALJ considered and applied the standards governing credibility assessments, *see* 20 C.F.R. § 404.1529, and, procedurally speaking, provided reasons "supported by evidence in the case record . . . sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

18

gave to the individual's statements and the reason for the weight," SSR 96-7p.[4]

### G. Conclusion

For the foregoing reasons, this Court finds that the ALJ's RFC assessment is supported by substantial evidence, and the ALJ adequately explained his credibility assessment. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

---

[4]This Court also notes that Plaintiff has failed to explain how any procedural defect in this case caused the ALJ to err in his RFC assessment. In fact, Plaintiff has pointed to no specific testimony that the ALJ should have credited but did not. To this Court's understanding, Plaintiff primarily asserts that the ALJ erred in discounting his statements regarding severe pain. In this regard, the Court notes the following testimony:

> Q: Why do you have to elevate your leg, what's going on with it?
> A: Because it got pain it in, if I like stand on it too long my leg it get numb and stuff.
> Q: And what does the elevation do for it?
> A: It takes away the pain.
> Q: Completely?
> A: *Yeah. It takes away*. It will hurt like if I'm standing on it, it hurts like a toothache, it's like throbbing if I stand on it too long.
> Q: Okay. And when you have it elevated there's no pain at all?
> A: I mean, the pain – it's a pain there but it don't hurt as much.

(Tr. 506-07 (emphasis added).) This testimony clearly suggests that Plaintiff's foot pain is reduced when his foot is elevated and it is not unreasonable for the ALJ to conclude that Plaintiff's pain is manageable in that state. As discussed, the VE testified that substantial jobs exist that allow for leg elevation (whether at twelve inches or "chair" height). And to the extent that Plaintiff still suffers from pain during elevation, the ALJ accounted for this by noting that Plaintiff had problems in concentration, persistence, or pace due to his pain. (Tr. 19-20.)

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES MAGISTRATE JUDGE

Dated: August 30, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 30, 2011.

        s/Jane Johnson
        Deputy Clerk